UNITED STATES of America, Plaintiff,

v.

Charles R. JOHNSON, Defendant.

No. 74–572 C (1).

United States District Court,
E. D. Missouri, E. D.

Nov. 21, 1975.

As Amended June 25, 1976.

Donald J. Stohr, U. S. Atty., St. Louis, Mo., Thomas S. Brett, Atty., U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Theodore F. Schwartz, Clayton, Mo., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MEREDITH, Chief Judge.

This cause was tried to the Court without a jury. The Court has been fully advised and makes the following findings of fact:

*Findings of Fact*

1. The United States of America, acting upon the certification to the Attorney General by the Federal Trade Commission, brings this action under 15 U.S.C. §§ 45(*l*), 56, to recover civil penalties for a violation of an order to cease and desist issued by the Commission on July 29, 1969, which became final on October 6, 1969.

2. The order contained the following language:

"IT IS ORDERED that respondents Technical Education Corporation, a corporation, and its officers, and C. R. Johnson, individually and as an officer of said corporation, and respondents' agents, representatives and employees, directly or through any corporate or other device, in connection with the advertising, offering for sale, sale or distribution of courses of study and instruction in the field of data processing or any other subject in commerce, as 'commerce' is defined in the Federal Trade Commission Act, do forthwith cease and desist from:

"(1) Representing, directly or by implication, that employment is being offered when the real purpose of such offer is to obtain leads to prospective purchasers of respondents' course.

"(2) Representing, directly or by implication, that respondents or their school are sponsored by, approved by or have any connection with the International Business Machines Corporation (IBM) other than to provide training or instruction in the operation of equipment manufactured or distributed by IBM; or misrepresenting, in any manner, the status or affiliation of respondents, their school or their sales representatives.

"(3) Representing, directly or by implication, that respondents' school is licensed or registered in any state unless it is so licensed or registered and unless in immediate connection with such representation respondents clearly and conspicuously disclose the meaning, if any, of such licensing or

registration; or misrepresenting, in any manner, the import or effect of licensing, registration or any other action by a state or other jurisdiction.

"(4) Representing, directly or by implication, that persons who complete respondents' courses are guaranteed or assured of employment in the positions for which they have been trained; or misrepresenting, in any manner, the ability, efforts or facilities of respondents or their placement service for assisting persons completing respondents' courses in obtaining employment.

"(5) Representing, directly or by implication, that an aptitude or other test is adequate to measure the aptitude or ability of an enrollee to successfully complete respondents' course and attain the advertised objectives of the course unless such test is based upon established personnel testing practices in the data processing field; or misrepresenting, in any manner, the selectivity exercised by respondents in enrolling students in their courses or the qualifications which students must possess to be accepted for enrollment.

"(6) Representing, directly or by implication, that a prospective student may enroll in respondents' home study courses only at the time of the visit by respondents' sales representative or that if the student is not enrolled at the time the opportunity to enroll will have been lost; or misrepresenting, in any manner, that the opportunity to enroll in respondents' courses is limited.

"(7) Inviting or obtaining inquiries concerning respondents' courses from prospective students without clearly informing such persons reasonably in advance thereof that respondents' sales representative will call upon them and seek to enroll them in one of respondents' courses.

"(8) Failing to:

(a) Furnish to prospective students at time of enrollment a printed statement clearly and conspicuously disclosing (1) the exact terms and conditions under which a student may discontinue his or her enrollment prior to completion of the course in which enrolled and (2) such refund of money, if any, or other adjustment that respondents will make in the obligation of the student who requests withdrawal or discontinuance in accordance with respondents' terms and conditions therefor.

(b) Set forth the disclosures required by (a) preceding clearly and conspicuously in and as a part of the enrollment application or such documents as may be executed by prospective purchasers of respondents' courses.

(c) Require their sales representatives or other persons who visit prospective purchasers of respondents' courses and solicit their enrollments in respondents' courses to orally inform and advise prospective purchasers of the information required to be disclosed by (a) and (b) preceding.

(d) Clearly and conspicuously disclose to prospective purchasers of respondents' courses prior to enrollment that the collection of student accounts may be undertaken by a designated agency but that such action does not affect such rights to discontinuance of affirmative defenses as the student may have."

3. C. R. Johnson was the president of Technical Education Corporation from October 23, 1968, to the time of trial. He was also the chief executive officer, the treasurer, and the sole stockholder. The principal place of business of Technical Education Corporation was in St. Louis, Missouri, and defendant lived in St. Louis, Missouri, until recently. During the year 1969 gross sales of Technical Education Corporation were approximately $1,300,000; in 1970, $1,500,000; and in 1971, $4,900,000.

4. The method of operation of Technical Education Corporation was, basically:

(a) to place ads in the newspapers for programmers or to send direct mail to prospects after which a telephone call would be placed to the prospect and a salesman would call on the prospect. The salesman would sign up the prospect for a course of study which included an agreement to pay various amounts ranging from $495 to $1,390. The prospects also signed an application for a HEW student loan.

(b) Technical Education Corporation also had a boiler room operation where telephone operators would call prospects and ask if they would be interested in an $800 a month job or if they had a young relative who would like such a job.

(c) In some instances, the applicants took an aptitude test but the salesmen were instructed to pass all applicants if they could "walk and chew gum".

(d) The salesman stated that the applicant would have a good paying job immediately upon completion of the course and in many instances advised the applicant that there was a limited number of places and they must either sign while the salesman was with them or the opportunity would be lost.

5. The contracts were sold to various financial houses without advising applicants.

6. The government's action alleged a violation of the Federal Trade Commission order in twenty counts. The government sustained their burden of proof on each of the twenty counts by showing a violation of said order in one or more different ways by persons representing Technical Education Corporation.

7. Defendant did have sent to the various salesmen a copy of the Federal Trade Commission cease and desist order, had them acknowledge receipt of the same, and return that to the office. No effort was made, however, to explain the import of the order or to enforce its provisions with the various salesmen in the field.

8. The defendant testified that a loan company had taken over the lists, furniture, and assets of the Technical Education Cor-

poration, but that no formal foreclosure had been accomplished. He testified that the Technical Education Corporation is not now doing business and that he has purchased a company which is distributing burglar alarms.

9. A penalty of $2,000 on each count, or a total of $40,000, will be assessed against defendant Charles R. Johnson.

*Conclusions of Law*

1. This Court has jurisdiction based on 28 U.S.C. §§ 1331(a), 1337, 1345, and 1355.

2. The Federal Trade Commission decree was directed against both Technical Education Corporation and the defendant, who was responsible for the acts of the salesmen of Technical Education Corporation.

3. The fact that defendant Charles R. Johnson sent a copy of the cease and desist order of the Federal Trade Commission to his salesmen is not a defense to this action.

4. Defendant will be permanently enjoined from violating the terms of the Federal Trade Commission cease and desist order and fined a total of $40,000.